IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAD HAMMOND, # K-53658, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-418-GPM |
| ) | |
| C/O JAMES, MAJOR BRADLEY, ) | |
| C/O LIND, DR. REEVES, ) | |
| DR. WALLACE, K. DEEN, ) | |
| GINA ALLEN, S.A. GODINEZ, ) | |
| COUNSELOR HARTMAN, ) | |
| C/O FURLOW, DR. SHAH, ) | |
| WARDEN GAETZ, ) | |
| and DR. VAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Western Illinois Correctional Center ("Western Illinois"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff is serving sentences for multiple convictions for residential burglary. He claims that Defendants failed to protect him from assaults by fellow inmates during his confinement at Pinckneyville.

More specifically, the complaint states that in March 2011, Plaintiff learned that a fellow Pinckneyville inmate (Lara) was serving time for molesting the child of Plaintiff's family friend (Doc. 1, p. 15). Plaintiff did not know inmate Lara, nor could he identify him by sight. However, anticipating problems, he contacted Defendant James (Internal Affairs officer) and signed a "Keep Separate From" ("KSF") form to request no contact with inmate Lara. Approval of the KSF form would be up to Defendant Bradley (head of Internal Affairs). Upon inquiry as

to the status of his KSF request, Plaintiff learned that Defendant James, in an effort to determine whether Lara knew or had any animosity toward Plaintiff, had showed Plaintiff's picture to inmate Lara and identified Plaintiff as "Tessie's brother" (Doc. 1, p. 16). Plaintiff believed this reference alerted Lara to his connection to Lara's victim. On June 27, 2011, Plaintiff was placed in the same housing unit as Lara, so he wrote to Defendant James asking to be moved. Inmate Lara assaulted Plaintiff on July 1, 2011.

A few days later, Plaintiff was put back into general population by Defendant Lind, and he asked about his KSF request. Defendant Lind told him to "just chill," and disputed Plaintiff's claims that he had requested protection before the assault (Doc. 1, p. 17).

Plaintiff's next cellmate was inmate Patterson, who stole from Plaintiff and assaulted him (Doc. 1, p. 17). Plaintiff did not report these incidents because he was told that inmate Patterson was working for Internal Affairs. Instead, Plaintiff "refused housing" to get out of that cell, and was placed in segregation for one month. Plaintiff then wrote to Defendant Reeves (Pinckneyville doctor/mental health administrator) and Defendant Wallace (psychologist) asking to be "placed back on vulnerable status"[1] for his safety (Doc. 1, p. 17). However, this was not done.

On August 21, 2011, Plaintiff filed a grievance requesting a lateral transfer (Doc. 1, pp. 4-8). It was denied by Defendant Deen (Pinckneyville grievance officer) (Doc. 1, pp. 10, 17). She relied on statements by Defendants James and Lind, who denied Plaintiff's allegations regarding the events leading up to the Lara attack. Defendants Allen and Godinez concurred in the denial of the grievance (Doc. 1, pp. 11, 17).

On May 14, 2012, Plaintiff wrote to Defendant Hartman (counselor) explaining that his

---

[1] Plaintiff does not explain the meaning of placement on "vulnerable status," but appears to believe that this would have resulted in some protection for him or affected his subsequent housing arrangements.

new cellmate (Lesley Bowman) was making unwanted sexual advances to him and threatening to "take" the bottom bunk from Plaintiff (Doc. 1, pp. 17-18). Plaintiff had a "low bunk" permit due to medical problems, but had lost his copy, so he requested Defendant Hartman to provide him a copy of the permit. He also wrote Defendant Wallace asking for a copy. On May 17, 2012, Plaintiff wrote to "R5 Lt. or Sergeant" requesting to be moved.

Inmate Bowman attacked and choked Plaintiff on May 18, 2012. He immediately reported this assault to Defendants Lind and Hartman, and filed a grievance requesting he be moved for his safety[2] (Doc. 1, pp. 12, 18). However, Plaintiff's cell assignment was not changed. A week later, Plaintiff asked Defendant Dr. Shah for a new ace bandage for a prior injury and mentioned his "assaultive cellmate." *Id*.

On May 29, 2012, Plaintiff complained to Defendant Van (psychiatrist) that his reports of inmate Bowman's sexual advances were being ignored. When he returned to the cell from that appointment, Plaintiff was attacked again by Bowman (Doc. 1, p. 19). Bowman struck Plaintiff in the head and face, but Plaintiff did not punch back because of his medical impairments.[3] He alerted guards to the attack by kicking the cell door.

Defendant Furlow issued Plaintiff (and Bowman) a disciplinary ticket for fighting, despite Plaintiff's protest that he had been attacked and had made multiple reports of Bowman's threats. Plaintiff wrote Defendant Lind asking to be transferred to another prison for his safety. Plaintiff saw Defendant Reeves on June 5, 2012, for a mental health review (Doc. 1, pp. 32-33), and again requested to be placed back on "vulnerable status" (Doc. 1, p. 19-20). Plaintiff thought Defendant Reeves agreed to make this change, because he was not required to share his

---

[2] This May 20, 2012, grievance refers to the cellmate as "Lesley Bowers" and complains that Defendant Lind failed to respond to Plaintiff's request for protection (Doc. 1, p. 12).

[3] These included an injury to Plaintiff's spine, and right arm, wrist and hand, for which he required the Ace bandage and a "wrist wrap" (Doc. 1, p. 13).

cell with another inmate while he remained in Pinckneyville. However, it appears his request was not granted.

Plaintiff went before the disciplinary committee on the fighting charge on June 6, 2012, and was found guilty. Although he had requested a witness (another inmate who had been told by Plaintiff's cellmate Bowman that he planned to attack Plaintiff on May 29), no witness was called. Plaintiff was found guilty and his discipline included a transfer to Menard. Plaintiff believes he would not have been transferred there if Defendant Reeves had restored him to "vulnerable" status (Doc. 1, p. 20).

After Plaintiff's transfer to Menard, Defendant Lind came to interview him, and said he would help Plaintiff. Instead, he changed Plaintiff's gang status from no affiliation to "White Supremacist" (Doc. 1, p. 20). Plaintiff insists he has never been connected to any gang, did not ask for this change, and is now at greater security risk because of Defendant Lind's action. Plaintiff claims Defendant Lind took this action in retaliation against him (Doc. 1, p. 15).

Finally, Plaintiff includes Defendant Gaetz (Pinckneyville Warden) as a party because after Plaintiff wrote him letters requesting to be placed back on vulnerable status, he deferred to the judgment of Defendants Reeves, Van, Wallace, Shah, Deen, and Hartman and denied the request[4] (Doc. 1, p. 20-21).

As relief, Plaintiff seeks an injunction to expunge his disciplinary conviction for fighting on May 29, 2012; to remove his "gang affiliation" status; and to place him back on "vulnerable status" for his safety (Doc. 1, p. 34). He also seeks monetary damages.

---

[4] Plaintiff does not indicate that he ever requested Defendants Van or Shah to grant him vulnerable status. Plaintiff did ask Defendants Reeves and Wallace to do so. He asked Defendant Deen for a transfer, and asked Defendant Hartman for protection.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims, which shall receive further consideration:

**Count 1:** Against Defendants James and Bradley, for deliberate indifference to Plaintiff's safety and failure to protect him from assault by inmate Lara;

**Count 2:** Against Defendants Reeves, Wallace, Hartman, and Lind, for deliberate indifference to Plaintiff's safety and failure to protect him from assault by inmate Bowman; and

**Count 3:** Against Defendant Lind for retaliation (changing Plaintiff's gang affiliation status after Plaintiff filed grievances against him).[5]

In addition to the Defendants listed above, Defendant Godinez shall remain in the action, for the sole purpose of carrying out any injunctive relief to which Plaintiff may ultimately be entitled if he should prevail. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). It does not appear that any other named Defendant would be in a position to implement injunctive relief, as Plaintiff is no longer housed at Pinckneyville.

---

[5] Although Plaintiff's retaliation claim could have been pled more clearly, he refers to the "next to final paragraph" of his complaint as containing this claim (Doc. 1, p. 15). That paragraph describes Defendant Lind's alleged retaliatory act. Elsewhere in the complaint, Plaintiff refers to and attaches grievances in which he complains about or mentions Defendant Lind (Doc. 1, pp. 10, 12, 17-18). Giving liberal construction to Plaintiff's complaint, this is sufficient to state a retaliation claim at this early stage of the litigation. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

The following claims, however, fail to state a constitutional violation upon which relief may be granted, and shall be dismissed:

**Count 4:** Failure to protect Plaintiff from assaults by inmate Patterson;

**Count 5:** Denial of Plaintiff's August 21, 2011, grievance requesting a transfer, by Defendants Deen, Allen, and Godinez; and

**Count 6:** Filing of a false disciplinary report by Defendant Furlow, after Plaintiff was attacked by inmate Bowman.

In addition, Defendants Gaetz, Shah, and Van shall be dismissed from the action.

**Dismissal of Count 4**

In order to state a claim for deliberate indifference to Plaintiff's safety in the face of a risk of attack from a fellow prisoner, the complaint must indicate that Plaintiff made a prison official aware of the risk he faced, but the official acted, or failed to act, in disregard of that risk. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). With reference to the assaults on Plaintiff by his cellmate Patterson, Plaintiff specifically states that he did not report these incidents or any threats he may have received from Patterson. Given this fact, no Defendant can be said to have been deliberately indifferent to any risk Plaintiff faced from Patterson. Count 4 shall be dismissed with prejudice.

**Dismissal of Count 5**

Although prison officials have a duty to protect prisoners from known risks of violence at the hands of other inmates, *see Farmer*, 511 U.S. at 833, a prisoner does not have a right to obtain a transfer to another institution. A transfer request may be granted or denied at the discretion of prison administrators. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("States may move their charges to any prison in the system"). Therefore, the denial by

Defendants Deen, Allen, and Godinez of Plaintiff's transfer request/grievance did not violate any constitutional right.

Moreover, the denial of a grievance by an official who merely reviews an adverse action, but was not the original decision-maker, does not give rise to liability. The alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). According to Plaintiff's allegations, Defendants Allen and Godinez simply approved Defendant Deen's action on Plaintiff's grievance. This is not a violation of Plaintiff's rights. While a different outcome on the grievance might have put Plaintiff out of reach of inmate Bowman, this is not a sufficient connection to impose liability on Defendants Deen, Allen, or Godinez for the Bowman assault. Count 5 and Defendants Deen and Allen shall be dismissed from the action with prejudice.

**Dismissal of Count 6**

Plaintiff asserts that Defendant Furlow wrote him a false disciplinary report for fighting, when in fact he was the victim of attack by his cellmate Bowman, and did not fight back.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from

arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

If Plaintiff was given a proper hearing, yet was found guilty of the false charge, he would not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). In this case, the officers' statements on the disciplinary report (Doc. 1, pp. 30-31) are sufficient evidence to support a finding of guilt, even though Plaintiff disputes their veracity. Furthermore, even though Plaintiff asserts he was denied one of the procedural protections in *Wolff* (his witness was not consulted), he still may not have an actionable claim.

In order to state a claim for a procedural due process violation, Plaintiff must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (disciplinary segregation does not impose an atypical and significant hardship unless it is of sufficient duration and includes conditions that are markedly more harsh than in nondisciplinary segregation). Other than his disciplinary transfer to Menard, Plaintiff does not describe any punishment that was imposed upon him as a result of the allegedly flawed hearing. As noted above, prison officials may transfer an inmate to any institution without implicating a due process interest. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("prisoners possess neither liberty nor property in their classifications and prison assignments").

The allegations against Defendant Furlow in Count 6 fail to state a violation of Plaintiff's civil rights, and shall be dismissed with prejudice. If the disciplinary action had any impact on

the duration of Plaintiff's sentence (which the complaint does not disclose), this dismissal shall not preclude him from seeking relief in a federal habeas corpus action, but only after he has exhausted his remedies in state court.

**Dismissal of Defendants Shah, Van, and Gaetz**

Plaintiff's only allegation against Defendant Shah (a medical doctor) is that he mentioned his assaultive cellmate (Bowman) during a medical visit regarding his unrelated arm injury. Similarly, Plaintiff saw Defendant Van for a mental health visit, and complained that other officials had ignored his reports about Bowman's sexual advances. Plaintiff does not indicate that he asked either of these Defendants to take steps to protect him from Bowman, or that they could have done so if asked. He does not include either of them among the Defendants (Reeves and Wallace) whom he requested to place him back on "vulnerable status." It thus appears that Plaintiff has included Defendants Shah and Van as parties because they had a theoretical opportunity to rescue Plaintiff, if they had taken heroic action when he made casual mention of his concerns about his cellmate. The facts alleged do not indicate that either of these Defendants had sufficient awareness of a specific, impending, and substantial threat to Plaintiff's safety that would satisfy the subjective component of a deliberate indifference claim. *See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Defendants Shah and Van shall be dismissed.

As to Defendant Gaetz, the complaint indicates that he merely followed the recommendations or ratified the actions of other officials who had denied Plaintiff's requests to be placed on "vulnerable status." As noted in the discussion under Count 5, the action of approving a subordinate official's resolution of a grievance or complaint does not give rise to liability. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Furthermore, the doctrine of *respondeat superior* is not applicable to § 1983 actions, and Plaintiff's allegations do not suggest

that Defendant Gaetz was "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A defendant in a supervisory capacity may only be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Id.* The complaint does not suggest that this was the case, therefore, Defendant Gaetz shall be dismissed from the action.

**Pending Motions**

Plaintiff's motion for service of process at government expense (Doc. 5) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below for the Defendants who remain in the action. The dismissed Defendants shall not be served.

**Disposition**

**COUNTS 4, 5, and 6** are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Defendants **DEEN, ALLEN, FURLOW, SHAH, GAETZ,** and **VAN** are **DISMISSED** from this action **with prejudice**.

The Clerk of Court shall prepare for Defendants **JAMES, BRADLEY, LIND, REEVES, WALLACE, GODINEZ,** and **HARTMAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by

Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** June 19, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge